**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 26, 2011

Lyle W. Cayce
Clerk

No.  10-40510

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

TYRONE EUGENE JORDAN,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:10-CR-20-3

Before JONES, Chief Judge, and STEWART and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Tyrone Eugene Jordan was convicted of conspiracy to launder money and conspiracy to transport illegal aliens.  He appeals the district court's calculation of his money laundering conspiracy offense level and, as a consequence, his concurrent transport conspiracy sentence.  We conclude the district court clearly erred by including $304,500 in cash in computing the total value of laundered funds, and we REVERSE that calculation.  We further conclude that the district court's transport conspiracy sentence may have been influenced by this

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No.  10-40510

erroneous calculation, and therefore VACATE Jordan's sentence and REMAND for re-sentencing on both counts.

Jordan's convictions arose from his participation in an alien- and drug-smuggling enterprise.  Arturo Apac began this enterprise in 2008, using airplanes to transport drugs, drug proceeds, and illegal aliens.  Jordan met Apac in November 2008, in consultation with Apac about his financial arrangements. Starting in December 2008, Apac made three payments totaling $114,000 toward the purchase of  a Cessna airplane: $5,000 wired from a bank account under one of Apac's front businesses, Global Labor Management; $15,000 delivered in cash by two of Apac's pilots; and $94,000 routed through Jordan's wife's bank account. Witnesses testified at trial to Jordan's presence for the $15,000 payment; Jordan concedes his involvement as to the $94,000.

Law enforcement learned of Jordan's association with Apac during an airplane seizure in April 2009.  Apac planned a trip from Houston to Atlanta to transport 80 to 90 pounds of cocaine; witness testimony at trial indicated Jordan knew of the cocaine on the airplane.  Jordan traveled with Apac from Houston to Atlanta and intended to continue to Miami.  Apac cancelled the Miami trip and instead transported $304,500 in concealed cash back to Houston.  Federal authorities searched the Cessna, discovered the $304,500, and confiscated both. An investigation revealed both Apac's operation and Jordan's involvement. Agents began surveillance on Jordan as a result.  Jordan was later identified in a traffic stop as the driver of a vehicle carrying three illegal aliens.

Jordan was arrested, tried, and convicted on one count of conspiracy to knowingly conduct a financial transaction with drug trafficking proceeds in violation of 18 U.S.C. § 1956(a)(1) and (b), and one count of conspiracy to

No.  10-40510

transport illegal aliens, violating various sections of 18 U.S.C. § 1324(a).  The district court calculated Jordan's money laundering offense level at 30, with an advisory guidelines range of 97 to 121 months.  The court sentenced Jordan to concurrent 120 month sentences in prison for each count.  Jordan now appeals his sentences.

We review the district court's sentencing decisions for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 46, 128 S. Ct. 586, 594 (2007). We review the district court's application of the Sentencing Guidelines *de novo* and its findings of fact for clear error.  *United States v. Charon*, 442 F.3d 881, 887 (5th Cir. 2006).  A factual finding is clearly erroneous if a review of all of the evidence results in our definite and firm conviction that a mistake has been made.  *United States v. Valdez*, 453 F.3d 252, 262 (5th Cir. 2006).

Jordan challenges the district court's offense-level calculation on two grounds: (1) the district court erred by assigning a six-level increase under U.S.S.G. § 2S1.1(b)(1) because he had no knowledge the laundered funds were the proceeds of illegal activity; and (2) the court erroneously included the $5,000, $15,000, and $304,500 sums in the "value of the laundered funds" for purposes of § 2S1.1.

Jordan's first contention is without merit.  The court heard testimony that Apac informed Jordan the transferred currency belonged to criminals and that Jordan saw large quantities of cocaine in connection with his work for Apac. This clearly falls within the ambit of § 2S1.1(b)(1), which authorizes a six-level increase when a defendant "knew or believed that any of the laundered funds were the proceeds of . . . the manufacture, importation, or distribution of a

controlled substance." The district court did not err in applying the six-level increase.

Turning to Jordan's second contention, Section 2S1.1(a)(2) provides a base money laundering offense level of "8 plus the number of offense levels from the table in § 2B1.1 corresponding to the value of the laundered funds." Section 2B1.1 in turn assigns increasing offense levels for increasingly large values of laundered funds. Jordan concedes the legitimacy of the district court's inclusion of the $94,000 transferred through his wife's bank account, but he attacks the $5,000 and $15,000 airplane payments as well as the $304,500 found in the Cessna as improperly included within the "value of the laundered funds."

The government correctly contends that Jordan cannot escape responsibility for the two Cessna payments. Section 1B1.3(a)(1)(B) provides that "in the case of a jointly undertaken criminal activity," an offense level is calculated based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Jordan admitted he was present for the handoff of the $15,000 payment, and the district court did not clearly err in including the $5,000 payment when Jordan's financial advice to Apac — and the conspiracy — began prior to the $5,000 payment and Jordan was personally involved with the bulk of the remaining funds.

Whereas both of these payments obviously qualify within "the value of the laundered funds" for purposes of § 2S1.1(a)(2), however, we find no evidence in the record establishing a "transaction" that includes the $304,500 as laundered currency. *See* U.S.S.G. § 251.1(a)(2), cmt. n.1 (definition of "laundered funds" corresponds with violation of 18 U.S.C. § 1956); 18 U.S.C. § 1956(a)(1) (requires laundered funds to be "involved in a financial transaction"). While an airplane

4

No.  10-40510

purchase is a financial transaction, merely carrying cash proceeds of drug trafficking on a flight from Atlanta to Houston, absent more, is not.

Including the $304,500 resulted in a six offense-level increase to a total offense level of 30, with an advisory sentence of 97–121 months based on Jordan's criminal history.  The guidelines advise only 51–63 months for a level 24 offense.  Jordan further protests this erroneous increase influenced his alien-transport sentence, and we agree.  Jordan's alien-transport conviction carries a base offense level of 12, with an advisory sentence of 10–16 months.  The magnitude of the district court's departure from this advisory sentence, along with its parallel length to Jordan's money-laundering sentence, suggest that the district court might not have sentenced Jordan to 120 months for a level 12 offense had it not calculated the money-laundering offense level at 30.

For the foregoing reasons, we REVERSE Jordan's money laundering conspiracy sentence to the extent it was enhanced by the $304,500 in cash; VACATE the alien trafficking conspiracy sentence for reconsideration; and REMAND for resentencing.

**SENTENCED REVERSED in Part,
VACATED in Part and REMANDED.**